**HAYNES AMBULANCE SERVICE, INC.; City Ambulance of Alabama, Inc.; Med Star Ambulance Service, Inc.; Suburban Ambulance Service, Inc.; Suburban Emergency Service, Inc.; Hank's Ambulance Service, Inc.; A & A Ambulance Service, Inc.; Regional Paramedical Service; Newman's Medical Service; and Community Ambulance Service, Inc., each, a corporation, individually and for and on behalf of a class of persons or entities providing services to recipients of Medicare and Medicaid benefits as is more particularly referred to in this Complaint, Plaintiffs–Appellants,**

v.

**The STATE OF ALABAMA; Guy Hunt, Governor of the State of Alabama; The Alabama Medicaid Agency, an agency of the State of Alabama; Carroll Herrman, Commissioner of The Alabama Medicaid Agency; Donna Shalala, Secretary of the Department of Health and Human Services, an agency of the United States of America; Brian Moore, in his official capacity as Commissioner of The Alabama Medicaid Agency, Defendants–Appellees.**

No. 93–6419.

United States Court of Appeals,
Eleventh Circuit.

Nov. 1, 1994.

Jesse P. Evans, III, Najjar Denaburg, P.C., Birmingham, AL, Peter F. Nadel, Rosenman & Colin, New York City, for appellants.

Barbara C. Biddle, Richard A. Olderman, Dept. of Justice, Washington, DC, Robert M. Weinberg, Deputy Atty. Gen., Tori L. Adams Burks, Montgomery, AL, for Donna Shalala.

\* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designa-

Before ANDERSON and DUBINA, Circuit Judges, and ESCHBACH \*, Senior Circuit Judge.

PER CURIAM:

■ In this case we decide a narrow issue of statutory interpretation involving the Medicare and Medicaid Acts and certain provisions within these statutes that create a health care program for statutorily defined persons known as qualified Medicare beneficiaries (QMBs). The Medicaid Act requires state Medicaid agencies to make funds available for Medicare cost sharing payments for certain medical services on behalf of those qualified for the program. The federal government pays 80% of the Medicare rate to providers of Medicare Part B services to QMBs, with the state cost sharing payment covering the balance of the reasonable cost of such services. This payment is known as Part B coinsurance. The Alabama Medicaid Agency has adopted a plan, approved by the Secretary of the Department of Health and Human Services (the "Secretary"), whereby the state provides funds for Part B coinsurance, but caps the amount of such payments so that the total reimbursement does not exceed the Medicaid rate for each service.

The plaintiffs-appellants provide ambulance services to QMBs. They argue that the statutory provisions at issue require that cost sharing payments satisfy the Medicare rate for services, and thus the plan violates the Medicare and Medicaid Acts. The district court found in favor of the defendants and granted summary judgment. *Haynes Ambulance Service, Inc. v. State of Alabama,* 820 F.Supp. 590 (M.D.Ala.1993). We have jurisdiction under 28 U.S.C. § 1291 and, because the question involves purely legal issues, we review the district court order de novo. We agree with the appellants, following the Second and Third Circuit holdings on virtually identical statutory issues. *See Pennsylvania Medical Society v. Snider,* 29

tion.

F.3d 886 (3d Cir.1994); *New York City Health and Hospitals v. Perales,* 954 F.2d 854 (2nd Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 461, 121 L.Ed.2d 369 (1992); *see also Rehabilitation Association of Virginia, Inc. v. Kozlowski,* 838 F.Supp. 243 (E.D.Va. 1993) (following the Second Circuit holding in *Perales* ).

The sole issue before us is whether the Alabama plan can, consistent with the statute, limit its payment of Medicare Part B coinsurance (as defined in 42 U.S.C. § 1396d(p)(3)(D)) for QMBs so that the total reimbursement to providers does not exceed the Medicaid rate.

The recent opinion by the Third Circuit in *Snider* addresses in comprehensive manner the identical issue. The *Snider* opinion sets out the statutory framework and history, explains how the statutory language unambiguously requires a state plan to provide for payment in full of Medicare cost-sharing for QMBs, and thus explains why the attempt to cap payment at the Medicaid rate is inconsistent with the statute. *Snider* addresses each of the arguments, with one exception addressed below, proffered in this case by the appellees, and demonstrates the lack of merit in each argument. Unable to improve upon the analysis of the *Snider* opinion, we follow it and adopt its rationale. ·

The gist of the analysis may be summarized concisely as follows. Section 1396a(a)(10)(E)(i) of Title 42 provides:

A State plan for medical assistance must ... (10) provide ... (E)(i) for making medical assistance available for medicare cost-sharing (as defined in section 1396d(p)(3) of this title) for qualified medicare beneficiaries described in section 1396d(p)(1) of this title;

The Medicare cost-sharing which the quoted portion of the statute requires a state to pay is defined in § 1396d(p)(3). Expressly included in the amount required to be paid by the state is the 20% Part B coinsurance amount. *See* § 1396d(p)(3)(D) (including as part of the required amount: "The difference between the amount that is paid under section 1395*l* (a) of this title and the amount that would be paid under such section if any reference to '80 percent' therein were

deemed a reference to '100 percent' "). *See also Snider, id.* at 893 (§ 1396d(p)(3)(D) "obviously refers to the 20% coinsurance payment"). Section 1395*l* (a) commands that the federal government shall pay 80% of the reasonable charges for Part B services; these reasonable charges are established by the Secretary pursuant to Medicare § 1395w–4(b). Thus, § 1396d(p)(3)(D) expressly requires the state to pay the 20% coinsurance amount, i.e. the "difference" between 80% and 100% of the Medicare rate for a given service. Like the Third Circuit, we conclude that the statute unambiguously requires the state to pay the full amounts specified in the statute, not a partial amount limited by the Medicaid rate.

■ One argument relied upon by appellees and the district court was not addressed specifically by the *Snider* court. The district court found support for state limits on Medicare cost sharing payments in the language of clause (VIII), i.e. § 1396a(a)(10)(F)(VIII). *See* the Omnibus Budget Reconciliation Act of 1986 (OBRA '86), Pub.L. No. 99–509, § 9403, 100 Stat. 1874, 2053–55 (codified in part at § 1396a(a)(10)(F)(VIII)). The district court stated:

> Section 9403 of OBRA, which constitutes the 1986 amendments to the Medicaid Act creating QMBs, echoes Congress' earlier recognition that the states could limit amounts owing to providers for outpatient services to QMBs to the Medicaid rate. Section 9403(c)(2) [§ 1396a(a)(10)(F)-(VIII)] states that 'the medical assistance made available to a [QMB] ... shall be limited to medical assistance for Medicare cost sharing.... subject to the provisions of subsection (n) of this section....' *Haynes,* 820 F.Supp. at 594.

The district court went on to discuss § 1396a(n), stressing the permissive language of the provision, and concluded that § 1396a(a)(10)(F)(VIII), when read in conjunction with § 1396a(n), "demonstrates that Congress did not intend that the states unconditionally be required to reimburse the QMB provider at a rate greater than the Medicaid rate." *Id.* at 595.

We believe that this reasoning is misplaced. When the missing language from the second ellipsis in the quote above from the statute is reinserted, the meaning of that provision becomes clear. The text states that medical assistance made available to a QMB "who is only entitled to medical assistance because the individual is such a beneficiary shall be limited to medical assistance for medicare cost sharing." What this provision does is distinguish QMBs who are not also eligible for Medicaid from those, known as dual eligibles, who are eligible for both Medicare and Medicaid. It makes clear that Medicaid plans are responsible only for paying Medicare cost sharing on behalf of QMBs that are ineligible for Medicaid; they are not required to provide any other medical assistance under Medicaid. Thus, unlike dual eligibles, who are by definition entitled to the full range of Medicaid medical services (such as prescription drugs and dental services), the Medicare-only QMB is entitled only to Medicare cost sharing. Indeed the Secretary acknowledges that this was the Congressional purpose behind clause (VIII). Thus, we find no support for the appellees in this additional argument.[1]

Except as noted above, the several contrary arguments proffered by the appellees are identical to the arguments addressed and rejected by the *Snider* court. For the foregoing reasons, we conclude that the arguments of the appellees are without merit. We reject their attempts to wring ambiguity from a statute where there is none. Accordingly, we conclude that the statute requires the state to pay the Medicare cost-sharing amounts at issue without limitation to the Medicaid rate. We reverse the decision of the district court and remand with instructions to grant summary judgment to appellants on this issue, and for further proceedings consistent with this opinion.

REVERSED and REMANDED.

---

1. In addition we find no merit to the argument relied upon by the district court (relying in turn upon the *Perales* dissent, 954 F.2d at 863–69) based upon the purported distinction between Medicare Part A and Part B. *See Haynes,* 820 F.Supp. at 594–95. It is clear that the cost sharing provisions of § 1396d(p)(3) include not only Part B costs but also Part A costs, and § 1396a(n) clearly applies with equal force to both Parts A and B.